UNITED STATES DISTRICT COURT<br>
NORTHERN DISTRICT OF OHIO<br>
EASTERN DIVISION

| | | |
|---|---|---|
| KIM ARLENE CARROLL, | ) | Case No. 1:20-cv-01833 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| EVA ARLENE HILL | ) | |
| a/k/a EVA ARLENE BARBER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Kim Carroll brought this action seeking a declaration that she is the rightful heir of her alleged father's estate, among other claims for relief.  Given the nature of Plaintiff's claims, the Court directed the parties to brief whether the probate exception to diversity jurisdiction bars this case from proceeding in federal court.  Plaintiff maintains that it does not, the Barber Defendants say it does.  Notwithstanding Plaintiff's artfully drafted pleadings, which carefully frame this dispute to fall outside the narrow probate exception, the Court determines that granting the relief Ms. Carroll seeks would interfere with tasks that fall within the exclusive jurisdiction of State courts.  Accordingly, the Court **DISMISSES** this action for lack of subject matter jurisdiction.

## STATEMENT OF FACTS

Taking as true the facts alleged in the complaint and construing them in Plaintiff's favor, Plaintiff bases her claims on the following facts.  Albert Barber died on September 18, 1998.  (ECF No. 1, ¶ 36, PageID #6.)  In February 1999, his sister,

Defendant Arlene Barber, applied in Geauga County Probate Court to administer the estate. (*Id.*, ¶ 37; ECF No. 1-4, PageID #36.) The application did not list Plaintiff as Albert's next of kin, although Ms. Barber knew Plaintiff was Albert's biological daughter. (ECF No. 1, ¶ 38, PageID #6.) In August 2000, Ms. Barber applied in Geauga County Probate Court to probate a lost will, representing that Albert's executed will was lost and that she only had an unsigned copy. (*Id.*, ¶¶ 43, 44 & 51, PageID #7–8.) The probate court admitted the unsigned will and distributed the estate accordingly. (*Id.*,¶ 46, PageID #7.) Most of Albert's estate went to Ms. Barber, who was the executor. (*Id.*, ¶¶ 11, 46, 52–53, PageID #3, 7–8.) After distribution of the estate, Ms. Barber transferred portions of her inherited real property to other members of the Barber family between 2003 and 2018. (*Id.*, ¶¶ 54, 65–66, PageID #8, 10.)

In August 2018, several years after Albert's estate was probated, Ms. Barber told Plaintiff that Plaintiff was Albert's illegitimate daughter. (*Id.*, ¶ 26, PageID #5.) This was the first time Plaintiff heard Albert was her father, although Ms. Barber knew all along. (*Id.*, ¶ 35, PageID #6.) Several days before Plaintiff's paternity conversation with Ms. Barber, Dorothy Phillips, who is Ms. Barber's sister, filed an emergency motion for a guardianship over Ms. Barber, who was allegedly incompetent. (*Id.*, ¶ 67, PageID #10.) In November 2018, the Geauga County Probate Court found Ms. Barber incompetent due to dementia. (*Id.* at ¶ 70, PageID #11.) The probate court appointed Michelle Barber, the wife of Ms. Barber's nephew, as Ms. Barber's guardian. (*Id.*, ¶ 71; ECF No. 1-15, PageID #82.)

2

**STATEMENT OF THE CASE**

Based on these allegations, Plaintiff filed a complaint against Defendant Arlene Barber, other members of the Barber family, and the Geauga County Park District.  The complaint hinges on Plaintiff's claim that Albert's assets were wrongfully distributed after his death and improperly transferred among the Barber family.  Plaintiff was not a named beneficiary nor informed about the lost will application, but now believes she is entitled to legal and equitable remedies as the rightful heir to Albert's assets.  (*See* ECF No. 1, ¶¶ 45, 52–53, PageID #7–8.)  Plaintiff asserts thirteen counts against Defendants:  tortious interference (Count 1); breach of fiduciary duty (Count 2); negligence (Count 3); fraud/fraudulent concealment (Count 4); fraudulent conveyance (Count 5); unjust enrichment (Count 6); imposition and foreclosure of equitable lien on properties originally transferred to or inherited by Ms. Barber (Counts 7 and 8); quiet title (Count 9); civil conspiracy (Count 10); unauthorized practice of law (Count 11); breach of fiduciary duty against William A. Barber (Count 12); and declaratory judgment (Count 13).  (*Id.*, ¶¶ 85–186, PageID #13–27.)

Plaintiff invokes the Court's diversity jurisdiction, asserting she and Defendants are citizens of different states and that the matter in controversy exceeds $75,000.  (*Id.*, ¶ 9, PageID #3.)  On those points, there is no dispute.  Instead, the dispute at hand turns on whether an exception to the exercise of the Court's diversity jurisdiction forecloses Plaintiff's claims from proceeding in federal court.

## JURISDICTION

Under Rule 12(b)(1), the standard of review "depends on whether the defendant makes a factual or facial challenge to subject-matter jurisdiction." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 986–87 (S.D. Ohio 2020) (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).  Unlike a factual attack, which requires the district court to analyze conflicting evidence to determine if jurisdiction exists, a facial attack "challenges the jurisdictional sufficiency of the complaint given those facts." *Id.* at 987 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "When reviewing a facial attack, a district court takes the allegations in the complaint as true, similar to the approach employed in reviewing a Rule 12(b)(6) motion to dismiss." *Id.* (citation omitted).  Defendants lodge a facial attack here, challenging Plaintiff's standing by taking her claims at face value and as true for present purposes, not by challenging their factual predicate.  Therefore, the Court accepts the facts Plaintiff pleads as true in determining whether it has jurisdiction over this dispute.

## ANALYSIS

The parties disagree whether the Court has subject matter jurisdiction over Plaintiff's claims.  Defendants argue that Plaintiff lacks standing to bring her claims and that the probate exception bars the Court from exercising diversity jurisdiction. As to standing, Plaintiff maintains she need not have already established paternity in State court to claim the rights and remedies she seeks in federal court.  (ECF No. 25, PageID #260–64.)  As to the probate exception, she argues the Court has jurisdiction because (1) she is not challenging the validity of Albert's will and is not

4

asking the Court to exercise *in rem* jurisdiction over any property presently in the custody of the probate court; (2) the Court may, she argues, disgorge Defendants of property obtained through wrongful possession of bequeathed property; (3) her claims arise out of the mishandling of assets and transactions that occurred outside of probate proceedings; and (4) Albert's estate has been closed for two decades, and Defendants now privately own his assets, which are outside the probate court's custody.  ([ECF No. 20](), PageID #206–08.)

As more fully explained below, the Court concludes that it lacks jurisdiction for several reasons:  (1) Plaintiff lacks standing to recover from Defendants; (2) Plaintiff's claims do not concern *inter vivos* transfers excluded from the probate exception; (3) the labeling of Plaintiff's claims as *in personam* does not allow her to evade the probate exception; (4) Plaintiff's claims amount to an argument that Albert's estate was mishandled, which is an issue for the probate court; and (5) Plaintiff's claim for unauthorized practice of law depends on a determination within the sole jurisdiction of the Ohio Supreme Court.

## I.    Standing

"[T]o have the Court decide the merits of the dispute," a plaintiff must have standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Standing presents a "threshold determinant[] of the propriety of judicial intervention."  *Id*. at 517–18.  Without proper standing, the Court lacks subject matter jurisdiction and must dismiss the case. *Langfan v. Goodyear Tire & Rubber Co.*, 529 F. App'x 460, 463 (6th Cir. 2013). "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury

as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021). To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### I.A.    Standing Without Establishing Paternity

Defendants challenge Plaintiff's standing on the grounds that she is not a named beneficiary to Albert's will and cannot demonstrate she was entitled to inherit from him or invalidate his will in federal court. (ECF No. 24, Page #247–50.)  In response, Plaintiff argues that she has standing because no paternity action is required to adjudicate her claims. (ECF No. 25, PageID #260.)  But Plaintiff's claims depend on her alleged right to inherit from Albert, either by invalidating the probated will or through intestacy as Albert's illegitimate daughter. (*See* ECF No. 1, ¶¶ 86, 93–94, 99, 101, 109, 116, 118, 131–33, 137, 141, 149, 157, 175 & 182, PageID # 13–27.) Accordingly, Plaintiff cannot show she suffered an invasion of a legally protected interest or a concrete and particularized injury without establishing a paternal relationship to Albert. *See In re Estate of Hicks*, 90 Ohio App. 3d 483, 487–88, 629 N.E.2d 1086, 1088–89 (Ohio Ct. App. 1993) (finding that a paternity determination belongs to a State juvenile court).  Without legal paternity, Plaintiff lacks standing to bring her claims.

6

Under Ohio law, in an action contesting the validity of a will, the contesting party must be "a person interested" in the will.  Ohio Rev. Code § 2107.71.  A "person interested" is any person "who has such a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefited by setting aside the will."  *In re Estate of Scanlon*, 8th Dist. Cuyahoga No. 95264, 2011-Ohio-1097, 2011 WL 826288, at ¶ 12 (quotation and citation omitted).  Ohio courts have held that non-blood-related, non-beneficiaries lack standing to challenge a will.  *Id.* at ¶ 13 (holding that a non-beneficiary and non-blood-related nephew was not a "person interested" where "he would not be entitled to inherit by intestate succession if the will is found to be invalid").

Plaintiff's standing depends on establishing paternity to Albert because, absent paternity, she is not an interested person entitled to challenge the will.  Illegitimate children may inherit intestate from their fathers by bringing a paternity action under Chapter 3111.04 of the Ohio Revised Code.  *Byrd v. Trennor*, 157 Ohio App. 3d 358, 2004-Ohio-2736, 811 N.E.2d 549, ¶ 30 (2d Dist.) (citing *Hicks,* 90 Ohio App. 3d at 488, 629 N.E.2d at 1089).  Such actions must be brought no later than "five years after the child reaches the age of eighteen," Ohio Rev. Code § 3111.05, which Plaintiff failed to do.  (ECF No. 1, ¶ 12, PageID #4.)  Further, "[n]o Ohio court" has "allowed a child to utilize R.C. Chapter 3111 to establish paternity *post mortem . . .* to challenge a will or to inherit from a putative father" who died testate.  *Rushford v.*

7

*Caines*, 10th Dist. Franklin No. 00AP-1072, 2001 WL 310006, at *3 (Ohio Ct. App. Mar. 30, 2001).

### I.B.   DNA

Plaintiff submitted a DNA analysis to support her claim that she is related to the Barber family.  (ECF No. 25-1.)  In an unusual twist, the DNA analysis Plaintiff provides includes the genealogy of the man listed on her birth certificate as her father, Wallace Harper Lee, (*id.*, PageID #275–77), whom she also alleges is "not a real person" (ECF No. 1, ¶¶ 31–33, PageID #5–6).  Significantly, the DNA analysis does not establish legal paternity.  Plaintiff is a non-beneficiary and not a proven blood relative.  The determination of her relationship to Albert would require a paternity action, which under Ohio law is a function of juvenile courts, *see Hicks,* 90 Ohio App.3d at 487–88, 629 N.E.2d at 1089, and is not done *post mortem* for an individual who died with a valid will, like Albert, *Rushford,* 2001 WL 310006, at *3.  Absent a paternity finding, Plaintiff is not a "person interested" in Albert's estate and cannot demonstrate she suffered a concrete, particularized injury related to the probate of Albert's will.  *See Scanlon*, 2011-Ohio-1097, ¶¶ 12–13.  Therefore, Plaintiff lacks standing to challenge Albert's will and his estate's distribution.

## II.   Probate Exception

But even if Plaintiff has standing, the Court lacks subject matter jurisdiction over her lawsuit under the probate exception to diversity jurisdiction.  A well-established exception to diversity jurisdiction known as the probate exception provides that a "federal court has no jurisdiction to probate a will or administer an estate . . . ."  *Markham v. Allen,* 326 U.S. 490, 494 (1946).  The probate exception has

a "distinctly limited scope," and federal courts may retain jurisdiction so long as it "does not interfere with the probate proceedings" or "assume general jurisdiction" over the probate or property in the custody of the State court. *Id.* (quoting *Marshall v. Marshall*, 547 U.S. 293, 311 (2006)). Interfere means that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall*, 547 U.S. at 311.

This limited exception to a district court's jurisdiction does not "bar federal courts from adjudicating matters" outside the custody of a State probate court. *Id.* at 311–12. The Sixth Circuit has further explained that the probate exception only precludes federal subject matter jurisdiction when a plaintiff seeks to (1) probate a will, (2) annul a will, or (3) reach the *res* over which the State court has custody. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015) (quoting *Wisecarver v. Moore*, 489 F.3d 747, 750 (6th Cir. 2007)). However, the probate exception bars federal subject matter jurisdiction over claims for breach of fiduciary duty and actions related to "the conduct of the defendant as executor and the settlement of his accounts." *Bedo v. McGuire*, 767 F.2d 305, 306 (6th Cir. 1985) (quoting *Starr v. Rupp*, 421 F.2d 999, 1006–07 (6th Cir. 1970).

### II.A. *Inter Vivos* Transfers

Plaintiff seeks relief arising out of transactions that occurred after Albert's death. Attempting to bypass the probate exception, Plaintiff characterizes her claims as arising under various "*inter vivos*" transfers among Albert's beneficiaries, the Barber family. (ECF No. 20, Page #207.) *Inter vivos* transfers, however, concern "property that a party removes from a decedent's estate prior to his death." *Osborn*

9

*v. Griffin*, 865 F.3d 417, 435 (6th Cir. 2017).  Admittedly, the probate exception does not apply where a plaintiff challenges *inter vivos* transfers, because such transfers are "not part of the res" the probate court distributes.  *Id.*

Plaintiff argues she is only interested in the *inter vivos* transfers of Arlene's inherited property and not the annulment or invalidation of Albert's will.  ([ECF No. 20](), Page #206–07.)  She states that she is interested in unknown assets owned by "some or all of the Defendants through property transactions that occurred after the probate closed.  (*Id.*, PageID #201.)  Indeed, Plaintiff seeks relief related to 2018 real estate transfers from Arlene that occurred about 10 years after Albert's death and after the probate court administered his will.  These 2018 transfers "occurred outside of any probate proceeding," and Plaintiff argues that "such inter vivos transactions are removed from the limited scope of the probate exception." (*Id.*, Page #207.)  But the 2018 real estate transfers Plaintiff references do not qualify as *inter vivos* because they occurred after Albert's death.

Plaintiff relies on *Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017), in support of her request to disgorge Defendants of profits obtained through wrongful possession of the estate's property based on the 2018 transfers.  ([ECF No. 20](), Page #206.)  In *Osborn*, however, the litigants accepted the will's validity and only tried to recoup certain damages that arose out of *inter vivos* transfers.  *Osborn*, 865 F.3d at 436. Plaintiff correctly notes that profits an individual obtains after acquiring probated assets are matters outside the probate exception.  *Id.* (quoting *Marshall*, 547 U.S. at 311–12).  But federal courts have no jurisdiction where a plaintiff seeks to set aside

10

or appropriate assets that a probate court previously distributed. *Id.* at 435; *see also Cartwright v. Estate of Peterson*, No. 3:17-cv-01464,2018 U.S. Dist. LEXIS 225960, at *10, 2018 WL 4945232, at *4 (M.D. Tenn. July 2, 2018) (finding claims for breach of fiduciary duty and fraud only available in federal court if the damages relate to allegedly improper *inter vivos* transfers). Therefore, Plaintiff's claims differ from those of the plaintiffs in *Osborn,* who, unlike Plaintiff here, did not challenge the will or attempt to redistribute already probated assets.

Plaintiff also incorrectly relies on *Wisecarver*'s distinction between *inter vivos* transfers and transfers arising after the decedent's death. (ECF No. 20, PageID #204–06.) The *Wisecarver* Court held that the plaintiff's claims relating to *inter vivos* transfers were not subject to the probate exception, but barred the claims seeking money damages and other remedies relating to the "procurement and promotion" of a false will. *Wisecarver*, 489 F.3d at 751. The court determined that these claims would effectively challenge the will's validity and require the "district court to disturb or affect the possession of property" in an already probated estate. *Id.* (quoting *Jones v. Brennan,* 465 F.3d 304, 307–08 (7th Cir. 2006)).

Although *inter vivos* transfers do not fall under the probate exception, the factual basis for Plaintiff's claims occurred *after* Albert's death and the administration of his estate. Plaintiff repeatedly asserts that she is not trying to invalidate or annul Albert's will and that the *res* in question was "never in the custody" of State court. (ECF No. 20, PageID #206.) But awarding the relief she seeks would require the Court to invalidate an estate probated over 20 years ago.

11

Indeed, Plaintiff pleads that the Court should invalidate the will and estate distribution and declare her the "lawful heir" to Albert's estate. (*See, e.g.,* ECF No. 1, ¶ 62, PageID #9.)  Plaintiff argues "the will should not have been admitted to probate" and that she could have "contested the admissibility of the will" to be declared "the rightful heir." (*Id.*, ¶¶ 58, 61.)  She also requests that the Court declare her "the owner" of Albert's property, effectively asking the Court to redistribute the estate's probated assets. (*Id.*, ¶¶ 185–86, PageID #27.)

Unlike the beneficiaries in *Osborn*, Plaintiff does not accept the will's validity, nor does she challenge any *inter vivos* transfers out of Albert's estate before his death. Ultimately, Plaintiff actually or effectively asks the Court to invalidate Albert's will and estate distribution.  This type of relief falls within the narrow confines of the probate exception. *See Wisecarver,* 489 F.3d at 750–51.

## II.B.  *In Personam* Claims

Because she invokes the Court's *in personam* jurisdiction over Defendants, rather than proceeding *in rem*, Plaintiff argues that the probate exception does not apply.  (ECF No. 20, PageID #205–06.)  Some courts take a hardline approach and frequently hear *in personam* probate claims in federal court.  *See Jones,* 465 F.3d at 307–08. Other courts, including the Sixth Circuit, look beyond how claims are labeled and use a functional approach to manage *in personam* claims under the probate exception. *Wisecarver,* 489 F.3d at 751.

In *Wisecarver*, a plaintiff brought *in personam* claims for breach of fiduciary duty, breach of confidential relationship, undue influence, and fraud in federal court. Liberal construction of the probate exception, the court noted, would not bar these *in*

12

*personam* claims because they do not seek to probate or annul a will.  *Id*. at 750.

Despite the formal label of the claims as *in personam*, the court agreed that the

district court did not have jurisdiction over the claims seeking money damages and

other remedies relating to the "procurement and promotion" of a false will.  *Id*. at 751.

The court held that this relief "is precisely what the probate exception prohibits

because it would require the district court to dispose of property in a manner

inconsistent with the state probate court's distribution of the assets."  *Id*. (citing

*Marshall*, 547 U.S. at 311–12).

The Second Circuit holds that a court must examine "the substance of the relief

that [the plaintiffs are] seeking" and "not the labels they have used" when deciding

whether an action attempts to reach a *res* controlled by a State court.  *See Mercer v.*

*Bank of N.Y. Mellon*, 609 F. App'x 677, 679 (2d Cir. 2015).  In *Mercer*, beneficiaries

claimed that a trust's executors breached various duties by making improper

distributions.  Under the probate exception, the court barred the beneficiaries' claims

because they essentially asked the federal court to undo certain actions taken during

probate administration.  *Id*. at 680.  The *Mercer* Court's approach aligns with the

Sixth Circuit's functional approach set forth in *Wisecarver* to manage *in personam*

claims under the probate exception.

Plaintiff's characterization of her claims as *in personam* does not allow her to

evade the probate exception.  When liberally construed, Plaintiff's claims do not

invoke the Court's *in rem* jurisdiction.  However, the substance of Plaintiff's claims

and her ultimate relief is what matters.  *See Mercer*, 609 F. App'x at 679.  Plaintiff's

13

proposed relief may require the invalidation of Albert's will and seeks redistribution of assets distributed by the estate plus money damages.  At bottom, Plaintiff asks the Court to undo the estate's valid probate and administration, which occurred some 20 years ago.  The probate exception bars this Court from redistributing Albert's assets in a manner inconsistent with the original State court's proceedings.  *Wisecarver*, 489 F.3d at 751.

### II.C.  Mishandling the Estate

In a sense, Plaintiff asks the Court to declare her the "rightful heir" because Arlene mishandled the distribution of assets from Albert's estate.  (ECF No. 1, ¶¶ 63, 102, 104, PageID #14–15, 185–86.)  Courts frequently characterize claims like breach of fiduciary duty as a determination of whether a will's executor mishandled the estate, which the probate exception bars.  *See Starr*, 421 F.2d at 1007.  "[M]atters involving an alleged breach of fiduciary duties or the mismanagement of an estate by an administrator belong almost exclusively to the probate courts."  *Swartz v. Dicarlo*, No. 1:12-cv-3112, 2013 WL 3816734, at *6 (N.D. Ohio July 19, 2013); *Wozniak  v. Corrigan*, No. 1:05-cv-2259, 2006 WL 4512815, at *4 (N.D. Ohio May 12, 2006) (concluding that the probate exception barred fraud, tort, and contract claims because they were essentially *in rem* disputes stemming from the actions of the estate's executor).

Further, claims that challenge the conduct of an executor and attempt to bring such claims in federal court are "the sort of maneuver that the probate [ ] exception is intended to prevent."  *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007); *see also Lefkowitz v. Bank of New York*, 528 F.3d 102, 107 (2d Cir. 2007)

14

(noting that plaintiff sought to disguise "her complaints about the maladministration of her parent's estates" as claims for federal relief).

Plaintiff seeks relief that would require the Court to (1) invalidate Albert's will, (2) declare that Arlene mishandled the estate, and (3) redistribute already probated assets.  As a result, granting Plaintiff's claims for relief would require the Court to annul the probated will.  The relief Plaintiff seeks shows that this action falls within the scope of the probate exception.  *See Chevalier*, 803 F.3d at 801.

The complaint specifically alleges that Plaintiff's harm results from "Arlene's failure to perform her duties" (ECF No. 1, ¶ 102, PageID #14) and that, "[b]ut for Arlene's acts and omissions," Plaintiff would have been able to "defend her interests" under Albert's will (*id*. at ¶ 110, PageID #15).  Again, although characterized as *in personam* actions against Defendants, Plaintiff essentially asks the Court to review Arlene's administration of the estate.  *See Lefkowitz*, 528 F.3d at 107.  In this way, Plaintiff's claims amount to an action to determine whether Arlene mishandled Albert's estate, which falls within the probate exception.

## III.   Unauthorized Practice of Law

Finally, Plaintiff includes a claim for the unauthorized practice of law.  (ECF No. 1, ¶¶ 163–68, PageID #24.)   She alleges that William D. Barber engaged in the unauthorized practice of law when he prepared deeds to transfer real property from Arlene to William A. Barber. (*Id.* at ¶¶ 166–67, PageID #24.)   While standing principles and the probate exception likely bar this claim, it is also properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because the Ohio Supreme Court has not determined that William D. Barber engaged in the unauthorized

practice of law.  *Lowry v. Legalzoom.Com, Inc.,* No. 4:11CV02259, 2012 WL 2953109, at \*2–4 (N.D. Ohio July 19, 2012) (dismissing unauthorized practice of law claim under Rule 12(b)(1) where the Ohio Supreme Court had not ruled that the defendant engaged in the unauthorized practice of law); *see also Greenspan v. Third Fed. Sav. & Loan Ass'n*, 122 Ohio St.3d 455, 2009-Ohio-3508, 912 N.E.2d 567, ¶ 19 (holding that "all determinations regarding the unauthorized practice of law remain within the [Ohio Supreme Court's] exclusive jurisdiction").

## CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over the parties' dispute.  Therefore, the Court **DENIES AS MOOT** Plaintiff's pending motion to compel DNA testing (ECF No. 23) and **DISMISSES** Plaintiff's action pursuant to Rule 12(b)(1).

**SO ORDERED.**

Dated:  September 8, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio